# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELIZABETH OVERSTREET, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CIT MORTGAGE HOME LOAN TRUST )<br>2007-1 and CALIBER HOME LOANS, )<br>)<br>Defendants. ) | Case No. 15-cv-11709<br><br>Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants CIT Mortgage Home Loan Trust 2007-1's and Caliber Home Loans' motion to dismiss [26]. For the reasons set forth below, Defendants' motion to dismiss [26] is granted. Plaintiff is given until April 17, 2017, to file an amended complaint.

**I.    Background**

This case involves a residential mortgage of a single family residence located on Oakwood Court in Country Club Hills, Illinois (the "Property"). On October 21, 2005, Plaintiff Elizabeth Overstreet obtained a first and second mortgage on the Property from BNC Mortgage, Inc. ("BNC") for amounts totaling $170,000. [24, ¶ 10.] Both mortgages were subprime. *Id.* ¶¶ 12–13. In January 2006, BNC transferred the loans to Defendant CIT Mortgage Home Loan Trust 2007-1 ("CIT"), and the loan servicer became the entity now known as Caliber Home Loans ("Caliber," collectively with CIT, "Defendants"). *Id.* ¶¶ 15, 41.

In March 2015, Caliber sent Plaintiff a "Loss Mitigation Package" that included a loan modification application in an effort to help Plaintiff reduce her loan payments. Caliber approved Plaintiff's request for a short-term loan modification on July 25, 2015. On September 3, 2015, Caliber notified Plaintiff that her August payments were thirty days overdue. Plaintiff

alleges that this was an error. On October 9, 2015, Caliber sent another notice that it had updated her credit information to show that her August payments were current.

On November 5, 2015, Plaintiff sent a "notice of rescission" to Caliber because of its alleged violations of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"), and requested that Caliber rescind Plaintiff's mortgage. [24, at 35.] Defendants did not do so. Eight days later, Caliber sent Plaintiff a mortgage statement that listed a fee of $118.50. *Id.* at 37. Plaintiff alleges that this fee was for a broker price opinion ("BPO"), which is typically used to determine the potential sales price or value of a real estate property. *Id.* ¶ 30.

In connection with these events, Plaintiff filed an amended complaint asserting claims under TILA and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") as well a as state law claim for unjust enrichment. [24.] The amended complaint asserts federal question and diversity jurisdiction. *Id.* ¶ 2. Defendants move to dismiss. [26.]

## II. Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim

under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his [or her] claim" and "may be considered by the district court in ruling on the motion to dismiss * * * without converting [it] to a motion for summary judgment." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

### III. Analysis

Defendants advance several arguments to dismiss. With respect to Plaintiff's TILA claim (Count I), Defendants argue that Plaintiff's right to rescind has been extinguished. Regarding the ICFA claims (Counts II and III), Defendants argue that Plaintiff fails to plead any facts that would show that Defendants engaged in "deceptive" or "unfair" conduct. Regarding the unjust enrichment claim (Count IV), Defendants contend that this claim must fall with Plaintiff's ICFA claim. The Court starts with the TILA claim.

#### A. TILA

Plaintiff's TILA claim is based on her 2015 rescission notice. Plaintiff alleges the original disclosures she received for her 2005 mortgage "did not identify the actual true lender," although CIT "was and always has been the actual lender." [24, ¶¶ 36–37.] Plaintiff states that she served her notice to rescind, but Defendants failed to return any money or property to her, which violates TILA. *Id.* ¶¶ 38–42.

Congress enacted TILA "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and to avoid

3

the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA grants borrowers the unconditional right to rescind a loan within three business days of "the consummation of the transaction." 15 U.S.C. § 1635(a); *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015). "Consummation means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13); accord *Dowdy v. First Metro. Mortg. Co.*, 2002 WL 745851, at *1 (N.D. Ill. Jan. 29, 2002) ("A credit transaction is consummated for the purposes of TILA when the plaintiffs become contractually obligated on a credit transaction; in this case, the consummation being the closing of the loan."). If the creditor fails to comply with TILA's various disclosure requirements, the statute extends the borrower's conditional right to rescind to three years after consummation. 15 U.S.C. § 1635(f); *Jesinoski*, 135 S. Ct. at 792.

Here, Plaintiff consummated her mortgage when she executed her mortgage documents on October 21, 2005.[1] [24, at 12–20.] However, Plaintiff served her notice to rescind on Defendants on November 5, 2015 (*id.* at 35)—more than ten years later. Even assuming that Defendants failed to make their required TILA disclosures, Plaintiff's right to rescind was extinguished on October 21, 2008. 15 U.S.C. § 1635(f); *Jesinoski*, 135 S. Ct. at 792.

The only way Plaintiff attempts to save her TILA rescission claim is through resort to "equitable tolling." [28, at 2–4.] But TILA's three-year limit is a statute of repose. See *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 638 (7th Cir. 2008). Unlike a statute of limitations, "[a] statute of repose * * * is substantive. It extinguishes any right to bring any type of cause of action against a party, regardless of whether

---

[1] Plaintiff's amended complaint alleges that "a loan is not 'consummated' until the actual lender is identified, because until that point there is no legally enforceable contract." [24, ¶ 35.] "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Plaintiff does not pursue this legal argument in opposing Defendants' motion.

such action has accrued." *Augutis v. United States*, 732 F.3d 749, 752–53 (7th Cir. 2013). "The rule in the federal courts is that both tolling doctrines–equitable estoppel and equitable tolling–are, just like the discovery rule, grafted on to federal statutes of limitations." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). However, "[n]either tolling doctrine applies to statutes of repose." *Id.* Because Section "1635(f) completely extinguishes the right of rescission at the end of the 3-year period," *Beach*, 523 U.S. at 412, equitable tolling does not apply to Plaintiff's claims.[2] She does not cite a single case to the contrary.[3]

Because Plaintiff cannot overcome this bar, the Court need not address whether the initial disclosures that she received were somehow deficient or her argument that rescission was "automatically" accomplished once Defendants failed to respond to her notice of rescission within 20 days. [28, at 5.] Plaintiff lacked a right to rescind when she attempted to assert one in November 2015, and Defendants are not liable under TILA for failing to accede to a demand that

---

[2] See *Williams v. Wells Fargo Home Mortg., Inc.*, 410 F. App'x 495, 499 (3d Cir. 2011) ("Because the right ceases to exist once a statute of repose has run, we conclude that equitable tolling cannot resurrect Williams' right to rescind the credit transaction."); *Taylor v. Money Store*, 42 F. App'x 932, 933 (9th Cir. 2002) ("Equitable tolling does not apply to rescission under this provision of TILA"); *Thomsen v. JPMorgan Chase Bank, N.A.*, 2017 WL 213800, at *2 (E.D. Wis. Jan. 18, 2017) ("§ 1635(f) is not a statute of limitations, and thus the doctrine of equitable tolling does not apply"); *Bolden v. Wells Fargo Bank, N.A.*, 2014 WL 6461690, at *5 (N.D. Ill. Nov. 18, 2014) ("equitable tolling does not apply to her TILA rescission claim"); *Cosey v. Ameriquest Mortg.*, 2011 WL 5828191, at *6 (N.D. Ill. Nov. 18, 2011) ("In other words, the three-year period is not subject to tolling doctrines but marks a final, unwavering deadline for rescission claims"); *Dye v. Ameriquest Mortg. Co.*, 2007 WL 4418195, at *3 (E.D. Wis. Dec. 17, 2007) ("Since there is no right to rescission after the three-year period, equitable tolling is not applicable."); *Spann v. Cmty. Bank of N. Virginia*, 2004 WL 691785, at *4 (N.D. Ill. Mar. 30, 2004) ("the three-year limitation period for TILA rescission claims is incompatible with tolling").

[3] Most of the cases cited by Plaintiff do not involve TILA. *Lee v. Cook Cty., Ill.*, 635 F.3d 969, 971 (7th Cir. 2011) (Title VII of the Civil Rights Act); *Smith v. Potter*, 445 F.3d 1000, 1002 (7th Cir. 2006) (same); *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1172 (7th Cir. 1999) (same); *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, at 503 (7th Cir. 1999) (Labor Management Relations Act); *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1165 (7th Cir. 1997) (Real Estate Settlement Procedures Act); *Cada*, 920 F.2d at 448 (Age Discrimination in Employment Act). The cases that touch on TILA only do so with respect to its one-year statute of limitations, not its three-year statute of repose. See *Asher v. Chase Bank USA, N.A.*, 310 F. App'x 912, 916 (7th Cir. 2009); *Lawyers Title Ins.*, 118 F.3d at 1165.

lacks legal effect. Because Plaintiff asserts no other TILA violation other than the failure to honor her non-existent right to rescind and the Court does not see how a further opportunity to amend would cure this defect, Plaintiff's TILA claim (Count I) is dismissed with prejudice.[4]

B.  **ICFA**

Plaintiff's ICFA claims rest on several different theories. In Count II, Plaintiff alleges it was "deceptive" for Defendants to tell Plaintiffs to pay the BPO fee, and Plaintiff is in "constant fear and worry of the BPO fee being a reason for Caliber to report her late to the credit bureaus and possibly considering her to be in default." [24, ¶¶ 46, 49.] In Count III, Plaintiff alleges that Defendants' conduct was "unfair" in three ways: (1) BNC was not registered under Illinois Residential Mortgage License Act ("RMLA") at the time that it originated Plaintiff's mortgages, which renders her loans void and constitutes an unfair practice; (2) BNC gave Plaintiff a "a sub-prime loan when she was qualified for a prime loan with a lower interest rate"; and (3) the BPO fee assessed by Defendants is not provided for in her mortgage. *Id.* ¶¶ 53–60.

ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citation and internal quotation marks omitted). "To state a claim under the ICFA, Plaintiffs must allege five elements: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately

---

[4] Plaintiff may never have had TILA rescission rights. The right to rescind does not apply to a "residential mortgage transaction," 15 U.S.C. § 1635(e)(1), which is defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling," 12 C.F.R. § 226.2(a)(24). See also 12 C.F.R. § 226.23(f)(1). While Plaintiff pleads that she resides at the Property [24, ¶¶ 4, 9], she does not specify if her mortgages were entered into to finance the acquisition or construction of the Property.

caused by the defendant's deception." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *6 (N.D. Ill. Oct. 6, 2015); accord *Siegel*, 612 F.3d at 934–35. "The element of actual damages 'requires that the plaintiff suffer actual pecuniary loss.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citation omitted).

A plaintiff may allege either deceptive or unfair conduct (or both) under ICFA. *Siegel*, 612 F.3d at 935; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012). A business practice "is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The conduct "must have misled a reasonable consumer in light of the totality of the information made available to the plaintiff." *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *2 (N.D. Ill. Oct. 14, 2016) (citation and internal quotation marks omitted); accord *Merix Pharm. Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 2006 WL 1843370, at *2 (N.D. Ill. June 28, 2006) (noting that deceptiveness is assessed "in the context of other information available to consumers"). An ICFA claim based on deceptive conduct must satisfy the particularity requirements of Rule 9(b).[5] "To satisfy the heightened pleading standard of Rule 9(b), 'the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where, and how: the first paragraph of any newspaper story.'" *Blankenship*, 2015 WL 5895416, at *7 (citation omitted).

For a business practice to be considered unfair, the Court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). A plaintiff does not need to satisfy all three criteria to

---

[5] Accord *Camasta*, 761 F.3d at 737–39; *David v. Bayview Loan Servicing, LLC*, 2016 WL 1719805, at *6 (N.D. Ill. Apr. 29, 2016); *Blankenship*, 2015 WL 5895416, at *6; *McKenney-Becker v. Safeguard Properties, LLC*, 2015 WL 170520, at *9 (N.D. Ill. Jan. 13, 2015); *Pniewski v. U.S. Bank Nat'l Assoc.*, 2014 WL 1052813, at *4 (N.D. Ill. Mar. 19, 2014); *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 754 (N.D. Ill. 2012).

support a finding of unfairness. *Id.* at 418. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (citation and internal quotation marks omitted). "[W]hether a practice is unfair depends on a case-by-case analysis." *Siegel*, 612 F.3d at 935. In contrast to a claim for deceptive practices, an ICFA claim for unfair practices need only satisfy Rule 8(a). *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

### 1. Deceptive Practices

As a threshold matter, Plaintiff has not alleged any actual damages for her deceptive practices claim (Count II). *Camasta*, 761 F.3d at 739. Plaintiff alleges that she was "injured" when she was assessed the BPO fee. [24, ¶ 47.] She does not, however, allege that she actually *paid* the fee. Notably, she does not seek to recover this fee as damages. Instead, she seeks punitive damages, attorney's fees and costs, statutory damages, and "other or further relief" the Court deems proper. *Id.* at 8. Those are not "actual damages." See *McNeal v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 6804585, at *6 (N.D. Ill. Nov. 17, 2016).

Plaintiff alleges that she is in "constant fear and worry" that the BPO fee will harm her credit (*id.* ¶ 49), but "the ICFA allows remedies only for economic injuries, not for emotional distress." *Alabi v. Homecomings Fin. LLC*, 2011 WL 4398140, at *7 n.12 (N.D. Ill. Sept. 21, 2011). Moreover, the fact she is worried about whether her credit will be harmed suggests that (1) this fee is still owed, and (2) her credit has not yet been affected. Cf. *Reeder v. HSBC USA, Inc.*, 2009 WL 4788488, at *13 (N.D. Ill. Dec. 8, 2009) ("[A] plaintiff must allege that he suffered 'actual damages * * * flowing from the alleged decrease in credit score such as that he was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit." (citation and internal quotation marks omitted)). Thus, accepting

Plaintiff's allegations as pled, she has not suffered an "actual pecuniary loss" as required to pursue her ICFA deceptiveness claim, and Count II must fail. *Camasta*, 761 F.3d at 739.

Even if Plaintiff had pled actual damages, her deceptive practices ICFA claim still would be wanting. The only deceptive practice Plaintiff identifies is that Defendant charged the BPO fee "when the note and mortgage do not authorize it." [45, ¶ 45.] "Plaintiff concedes" in her response brief "that the mortgage documents permit Defendants to charge for certain [a]mounts." [28, at 6.] Nevertheless, she claims that these fees "must be necessary to protect" either "Defendants['] rights in the [P]roperty" or "the value of the Property" to be imposed. *Id.*

In support of this limitation, Plaintiff cites *Porter v. Fairbanks Capital Corp.*, 2003 WL 21210115 (N.D. Ill. May 21, 2003). In *Porter*, the plaintiff's mortgage documents stated that, if the borrower "fails to perform the covenants and agreements * * * then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property." *Id.* at *4. Those actions included "paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs." *Id.* The mortgage documents further provided that "[a]ny amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower." *Id.* Construing that language, the court held that whether "broker price opinions are necessary to protect the value of the property" was a merits question, and plaintiff's allegation that "broker price opinion charges are not permitted because they do not protect the value of the property" stated a claim under ICFA and the Fair Debt Collection Practices Act.[6]

---

[6] Defendants mistakenly argue that the court in *Porter* "explicitly" dismissed the ICFA Claim (Count VIII) based on the BPO fee theory. [30, at 5] In fact, the court held that the "plaintiff adequately state[d] claims in Counts VI and VIII on the theory that broker price opinion charges are not permitted," and dismissed the ICFA claim related to a different theory about charges paid to an affiliate. *Porter*, 2003 WL 21210115, at *4–5. A possible source of this confusion may have been the opinion's conclusion, which appears to dismiss Count VIII despite holding otherwise. See *id.* at *9.

9

Here, Plaintiff's mortgage documents do not limit Defendants to imposing only "property preservation" fees. [28, at 6.] Rather, Plaintiff's mortgage states that "the [Defendant] will have the right to be paid back by me for all of its costs and expenses in enforcing this note to the extent not prohibited by applicable law." [24, at 14 (Section 7(E)).] Plaintiff does not allege (or argue) that the BPO fee is prohibited by law or unrelated to enforcing her mortgage, let alone plead either claim with particularity. See *Blankenship*, 2015 WL 5895416, at *7. Nor does *Porter* stand for the proposition that BPO fees that are not "necessary to protect the value of" a property violate the ICFA. [28, at 6.] The opinion's analysis is limited to mortgage documents that contain particular language limiting the types of fees that can be imposed. Plaintiff fails to provide the Court with any authority suggesting that such a "necessary to protect the value" limitation should be read into her mortgage documents. Absent that, Plaintiff's claim that Defendants' imposition of a BPO fee was deceptive because it was not necessary to protect the value of the Property fails to state a claim.

Plaintiff's ICFA deceptiveness claim also fails because it is indistinguishable from a breach of contract claim. ICFA "is 'not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.'" *Greenberger v. GEICO Gen. Ins. Co.,* 631 F.3d 392, 399 (7th Cir. 2011) (citation omitted). Instead, a valid ICFA claim requires a plaintiff to allege "unfair or deceptive conduct [that is] distinct from the alleged breach of a contractual promise." *Id.* at 400; see also *Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill. 2d 100, 169 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under the [ICFA]."); *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 313 (2000) ("[B]ecause a naked breach-of-contract claim does not support a [ICFA] claim, plaintiff could not make his *prima facie* case simply by adducing evidence that defendants did not do what they promised.").

At best, Plaintiff alleges that a BPO fee is not one of fees permitted under her mortgage, which means Defendants lacked a contractual right to assess that fee. [24, ¶ 45.] She fails to explain how that is "something more than a garden-variety breach of contract" or turns on anything other than the terms of her mortgage. *Greenberger*, 631 F.3d at 399; see also *Kesten v. Ocwen Loan Servicing, LLC*, 2012 WL 426933, at *7 (N.D. Ill. Feb. 9, 2012) (dismissing claims that defendant violated ICFA "by overcharging plaintiffs" because "virtually the same allegations [was made] in [plaintiff's] breach of contract claim"); *In re Ventra Card Litig.*, 2015 WL 1843044, at *4 (N.D. Ill. Apr. 21, 2015) (dismissing ICFA claims based on "imposition of unauthorized charges and overcharges" as "fail[ing] to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise"). She did not plead how Defendants' assessment of a BPO fee has "the capacity to deceive" or would have "misled a reasonable consumer." *Bober*, 246 F.3d at 938; *Galanis*, 2016 WL 6037962, at *2. Indeed, she does not respond to this argument at all. Plaintiff's remedy (if any) must be pursued through contract, not ICFA. Count II is dismissed.

### 2. Unfair Practices

The three "unfair" practices Plaintiff challenges are BNC's alleged violation of the RMLA, BNC's decision to give Plaintiff a sub-prime loan, and the BPO fee. *Id.* ¶¶ 53–60. The Court takes each allegation in turn.

The RMLA provides that "[n]o person, partnership, association, corporation or other entity shall engage in the business of brokering, funding, originating, servicing or purchasing residential mortgage loans without first obtaining a license[.]" 205 Ill. Comp. Stat. Ann. 635/1-3(a). Plaintiff alleges that "a mortgage made by an entity that lacks authorization under RMLA to conduct such business is void as against public policy." [24, ¶ 55.] Plaintiff's position had

some support in 2014 when the Illinois Appellate Court reached that very conclusion. See *First Mortg. Co., LLC v. Dina*, 2014 IL App (2d) 130567, ¶ 21. However, in July 2015—almost a *year* before the amended complaint was filed—the Illinois legislature amended the RMLA to abrogate *Dina*. See *In re Jordan*, 543 B.R. 878, 883 (Bankr. C.D. Ill. 2016). The RMLA now expressly states that "[a] mortgage loan brokered, funded, originated, serviced, or purchased by a party who is not licensed under this Section shall not be held to be invalid solely on the basis of a violation under this Section." 205 Ill. Comp. Stat. Ann. 635/1-3(e). "[A]s the 2015 amendment makes clear, there is not (and never has been) a right to avoid a mortgage that violates the RMLA." *Fed. Nat. Mortg. Ass'n v. Kimbrell*, 2016 IL App (3d) 140662-U, ¶ 27. And courts have uniformly rejected requests to void mortgages based on violations of RMLA since the 2015 amendments were adopted. See *Jordan*, 543 B.R. at 887; *Nationstar Mortg. LLC v. Missirlian*, 2016 IL App (1st) 152730-U, ¶ 15; *Kimbrell*, 2016 IL App (3d) 140662-U, ¶ 27; *Bank of N.Y. Mellon v. Robin*, 2016 IL App (2d) 151225-U, ¶ 55; *McNeal*, 2016 WL 6804585, at *7.

Plaintiff does not grapple with this case law or relevant legislative history. Nor does she explain how she can use ICFA (which provides a private right of action) to pursue a violation of the RMLA (which does not). See *Jordan*, 543 B.R. at 883 (holding there is no private right of action under RMLA). Her only attempt to distinguish the 2015 amendment is to assert that she alleges *two* violations of RMLA, not "a violation," and thus the 2015 amendment does not apply to her. [28, at 7.] Not surprisingly, other courts have rejected that strained argument, see *McNeal*, 2016 WL 6804585, at *7, and Plaintiff does not identify contrary authority.[7] Even so, her second alleged RMLA violation is her receipt of a subprime loan, yet Plaintiff cites nothing to show that providing a subprime loan to a borrower who might qualify for a mortgage with a

---

[7] Plaintiff's attorney represented the plaintiff in *McNeal* and apparently advanced many of the same arguments that Plaintiff asserts here. Those arguments did not fare better before the court in *McNeal*.

lower interest rate violates the RMLA. Because Plaintiff is left with her solitary, non-viable violation of the RMLA and she can cite no other "public policy" that BNC's conduct violates, her first example of ICFA "unfairness" fails.

Plaintiff also alleges that it was "unfair for BNC to give her a subprime loan * * * because she qualified for a prime loan because her credit was good." [28, at 6.] A "bare assertion of unfairness without describing in what manner the lack of disclosures either violate public policy or are oppressive is insufficient to state a cause of action." *Robinson*, 201 Ill. 2d at 421. "A practice can offend public policy if it violated a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation." *Ristic v. Mach. Zone, Inc.*, 2016 WL 4987943, at *3 (N.D. Ill. Sept. 19, 2016). Plaintiff does not identify any specific statutory provision, common law doctrine, or any other public policy that was violated by the mere fact that she received a subprime mortgage. She does not contend that subprime mortgages are *per se* illegal (they are not) or cite any court that accepted her "less optimal loan" theory of ICFA unfairness liability. Thus, she cannot rely on public policy to show "unfairness."

Similarly, Plaintiff does not explain how the fact that she was offered a subprime loan despite her "good credit" [28, at 6] was "so oppressive as to leave the consumer with little alternative except to submit to it." *Id.* at 418. "[T]his element is not satisfied if a consumer can avoid the defendant's practice by seeking an alternative elsewhere." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 834 (7th Cir. 2014). Here, Plaintiff does not indicate that she could not have requested a fixed rate loan from BNC, a loan with a lower interest rate, or chosen another lender. See, *e.g.*, *Siegel*, 612 F.3d at 936; *Ristic*, 2016 WL 4987943, at *3–4. The mere fact that she was offered and accepted a subprime loan does not, by itself, show oppression.

Moreover, Plaintiff does not explain how receiving a subprime loan caused her "substantial injury," meaning an injury that is "(1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Batson*, 746 F.3d at 834. Her complaint is silent as to whether she suffered *any* injury specifically because of the subprime nature of her mortgage. Even under the pleading standard for Rule 8, that is insufficient.

But even if Plaintiff could overcome all of these arguments, there is still at least one more reason that her RMLA and subprime mortgage theories must fail: she does not allege any misconduct by Defendants.[8] "There is no derivative liability under the ICFA." *McNeal*, 2016 WL 6804585, at *8; accord *Fleming-Dudley v. Legal Investigations, Inc.*, 2007 WL 952026, at *16 (N.D. Ill. Mar. 22, 2007) (collecting cases). BNC is unrelated to CIT or Caliber. To show that Defendants "engaged in" BNC's failure to procure an active RMLA license or BNC's decision to offer Plaintiff a subprime loan, Plaintiff must plead Defendants' "direct or active participation" in the offending conduct. *Suarez v. JP Morgan Chase Bank NA*, 2011 WL 2149427, at *6 (N.D. Ill. June 1, 2011); accord *Jackson v. South Holland Dodge, Inc.,* 197 Ill. 2d 39, 52–53 (2001) (dismissing ICFA claims because the allegation that defendant supplied blank

---

[8] One issue not raised by Defendants is if Plaintiff's ICFA claims related to the circumstances surrounding her 2005 mortgage are time barred. The statute of limitations for ICFA claims is three years. 815 Ill. Comp. Stat. Ann. 505/10(a)e. "An ICFA claim accrues when the plaintiff knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Blankenship*, 157 F. Supp. 3d at 792 (citation and internal quotation marks omitted). "In other words, the limitations period begins to run when the fraud was discovered or could have been discovered through due diligence." *Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*, 2013 WL 1337303, at *5 (N.D. Ill. Mar. 29, 2013). Although Plaintiff vaguely invokes the discovery rule, she does so only with respect to whether CIT was the owner of her loan. [24, ¶ 31.] She does argue that she could not have (1) known her credit score in 2005, (2) known that she received a subprime loan in 2005, or (3) determined "through due diligence" if BNC was registered online with the Illinois Department of Financial and Professional Regulation in 2005 pursuant to the RMLA. If true, it is hard to see how these two "unfairness" claims are not time barred.

forms that a dealership later completed with a misrepresentation was insufficient to show "direct" participation in the alleged prohibited conduct).

Plaintiff's only allegation about Defendants' direct or active participation is that CIT "was aware that BNC was not licensed" under the RMLA "because her loan was securitized and the parties to the securitization agreement exist before a loan is funded." [24, ¶ 61; 30, at 7.] Assuming that being a party to a securitization agreement would disclose the current status of counterparty's license under the RMLA (and it is far from clear why that would be the case), "knowingly receiving the benefits of another's fraud is not actionable" under ICFA. *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill. 2d 359, 369 (1998); accord *Brown v. SBC Commc'ns, Inc.*, 2007 WL 684133, at *3 (S.D. Ill. Mar. 1, 2007) (holding that "merely aiding and abetting an ICFA violation * * * is not actionable as a violation of section 2 of [ICFA]"). Allegations that CIT knew BNC was not licensed and benefited from the mortgage through a securitization agreement does not show how Defendants directly impacted whether BNC was licensed or were actively involved in setting the specific interest rate of Plaintiff's mortgage. *McNeal*, 2016 WL 6804585, at *8 (rejecting the same argument). One does not follow from the other, and without more, these allegations fail to state a claim under ICFA. *Suarez*, 2011 WL 2149427, at *7.

That brings us back to the BPO fee theory, which does not fare any better restyled as an "unfair" practice. Plaintiff still fails to allege any actual damages from imposition of this fee or how her theory is distinguishable from a breach of contract claim. She also does not identify any public policy that prohibits assessment of a BPO fee, how imposition of this fee was "oppressive," or how the $118.50 fee (which she apparently has not paid) caused her substantial injury that was not outweighed by the benefits in appraising her Property. Plaintiff has failed to meet her burden to plead this claim even under Rule 8, and Count III must be dismissed as well.

### C. Unjust Enrichment

Plaintiff alleges that Defendants have been unjustly enriched by Plaintiff's mortgage because BNC was not registered under the RMLA. [24, ¶¶ 65–67.] "Illinois law is arguably somewhat confused on whether a claim of unjust enrichment requires an underlying tort or breach of contract or whether, instead, there can be a free-standing claim based on the proposition that it would be unjust for the defendant to retain a benefit that it obtained at the plaintiff's expense." *Stevens v. Interactive Fin. Advisors, Inc.*, 2015 WL 791384, at *16 (N.D. Ill. Feb. 24, 2015). The Seventh Circuit has concluded that the "Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action," but it did not definitely resolve the question. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011).

Nevertheless, the Seventh Circuit explained that, to state a claim for unjust enrichment, Plaintiff must "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Id.* (citation and internal quotations omitted). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517. This same result obtains when the unjust enrichment claim is premised on the same conduct underlying an ICFA claim. See, *e.g.*, *Siegel*, 612 F.3d at 937 (Plaintiff's "theory of unjust enrichment is based on the defendants' conduct which he deemed unfair under ICFA. We rejected his ICFA claim. And absent that the defendants engaged in an unfair practice, [plaintiff's] unjust enrichment claim is not viable."); *Krug v. Am. Family Mut. Ins. Co.*, 2016 WL 2866142, at *3 (N.D. Ill. May 17, 2016) (dismissing unjust enrichment claim where plaintiff fails to "identify any allegations specifically supporting

16

his unjust enrichment claim (but unrelated to his remaining [ICFA] claims)"). Because the Court dismisses Plaintiff's ICFA claim premised on violations of the RMLA, her unjust enrichment claim premised on this same violation falls too.

Likewise, Plaintiff "does not dispute that the parties' relationship—including terms of payment—is governed by contract." *McNeal*, 2016 WL 6804585, at *9. "[W]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016). In addition, "given the express statement in the RMLA amendment that a mortgage is not void merely because a broker was unlicensed, [Plaintiff] cannot use unjust enrichment as a back door to void her mortgage (or seek return of her payments) based on the RMLA licensing requirements." *McNeal*, 2016 WL 6804585, at *9. Accordingly, Count IV is dismissed.

**IV.   Conclusion**

For the foregoing reasons, the Court grants Defendants' motion to dismiss [26]. Plaintiff is given until April 17, 2017, to file a second amended complaint regarding her ICFA and unjust enrichment claims if she believes that she can cure the deficiencies set out above. Plaintiff's TILA claim is dismissed with prejudice.

Dated: March 16, 2017

Robert M. Dow, Jr.
United States District Judge